IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBRA KAY ELDER,**

    **Plaintiff,**

    v.                                                             **Civil Action 2:15-cv-2740**
                                                                      **Judge George C. Smith**
                                                                      **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**REPORT AND RECOMMENDATION**

    Plaintiff, Debra Kay Elder, filed this action seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying her Title II application for a period of disability and disability insurance benefits. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

**I.    BACKGROUND**

    Plaintiff applied for benefits on January 19, 2012, alleging disability since September 1, 2011, due to back and knee problems, arthritis, high blood pressure, pain in her feet, and pain and a limited range of motion in her shoulders. After initial administrative denials of Plaintiff's claims, an Administrative Law Judge ("ALJ") heard her case on March 13, 2014. (Tr. 58, PAGEID #82). In a decision dated April 23, 2014, the ALJ denied benefits. (Tr. 38, PAGEID #62). That became the Commissioner's final decision on June 26, 2015, when the Appeals Council denied review. (Tr. 4, PAGEID #28).

Plaintiff filed this case on August 20, 2015, and the Commissioner filed the administrative record on October 27, 2015 (Doc. 6). Plaintiff filed a Statement of Specific Errors on November 29, 2015 (Doc. 7), the Commissioner responded on February 26, 2016 (Doc. 16), and Plaintiff filed a Reply Brief on March 17, 2016 (Doc. 17).

### A. Plaintiff's Hearing Testimony

Plaintiff was born on December 19, 1954, and she was 56 years old on the alleged onset date of disability. (Tr. 69, PAGEID #93). She testified that she is five feet seven inches tall and weighs 260 pounds. (*Id.*). Plaintiff has a high school education (Tr. 70, PAGEID #94), and past work experience as an owner and operator of a retail store for seventeen years (*id.*).

Plaintiff's retail store was primarily a gift shop, but it also carried small pieces of pine furniture, such as cabinets, sofa tables, and end tables. (Tr. 72, PAGEID #96). Plaintiff testified that she ran the store alone and did not have any employees. (Doc. 71, PAGEID #95). Plaintiff's work included ordering and keeping track of inventory and occasionally traveling to pick up furniture. (Tr. 74, PAGEID #98). Plaintiff also lifted boxes of inventory weighing up to 70 pounds, removed inventory from shipping boxes, transferred boxes to the back storage room, waited on customers, operated the cash register, and cleaned. (Tr. 73, PAGEID #97). Plaintiff did the store's bookkeeping at home. (Tr. 74, PAGEID #98). Plaintiff's husband helped her with inventory, including moving furniture, and cleaning. (Doc. 72–73, PAGEID #96–97).

Plaintiff testified that, as of her alleged onset date, "it had gotten almost impossible to do [her] daily chores." (Tr. 67, PAGEID #91). Hence, Plaintiff reduced her work hours from eight to ten hours per day to four to six hours per day. (*Id.*). Plaintiff continued to run the store alone from September, 2011, to February, 2012, with her husband coming in after hours to move

2

inventory.  (Tr. 68, PAGEID #92).  During this time, Plaintiff was able to sit at the counter and work the cash register (*id*.), but she elevated her feet on a stool while working (Tr. 78, PAGEID #102).

Plaintiff testified that she stopped working because she "was having to take pain medicine to even continue to work." (Tr. 76, PAGEID #100).  Plaintiff expressed having pain in her neck and shoulders, indicated that her feet and her legs swell, and stated that she has restless leg syndrome.  (*Id*.).  She was treated intermittently by a chiropractor, had surgery on both Achilles' tendons, received injections to alleviate knee pain, and took pain medication.  (Tr. 77, PAGEID #101).  Plaintiff discussed her medications, noting that Hydrocodone makes her nauseous, so she takes Fenergan along with it.  (Tr. 79, PAGEID #103).

Plaintiff explained that she can sit for 30 minutes (*id.*), or an hour if her feet are elevated (*id.*), stand for five to ten minutes (Tr. 80, PAGEID #104), and walk half of a block without stopping (*id*.).  Plaintiff testified that she has a limited range of motion in her shoulders (Tr. 81, PAGEID #105), her hands shake (*id*.), she can bend to touch her knees, but not the floor (Tr. 82, PAGEID #106), and the pain in her knees prevents her from squatting or kneeling (*id.*).

Plaintiff lives in a single-story home with her husband.  (Tr. 70, PAGEID #94).  Plaintiff testified that she tries to do light housework like dusting throughout the day but needs to take breaks.  (Tr. 83, PAGEID #107).  She also cooks but breaks to sit while doing so.  (Tr. 80, PAGEID #104).  Plaintiff reported needing both hands to lift a gallon of milk.  (Tr. 81, PAGEID #105).  Plaintiff does small loads of laundry (Tr. 83–84, PAGEID #108–109), and shops for groceries (Tr. 84, PAGEID #108).  Plaintiff testified that, while grocery shopping, she leans on the cart and gets help carrying bags to the car.  (*Id*.).  Plaintiff stated that she has no trouble

3

driving (Tr. 85, PAGEID #109), attends church on Sunday mornings (Tr. 86, PAGEID #110), goes out to eat approximately once a week (*id.*), does Sudoku and crossword puzzles (*id.*), and watches television (*id.*). Plaintiff takes one or two naps per day because her medicine makes her tired, and she has some trouble sleeping at night. (Tr. 87, PAGEID #111). Plaintiff sees her grandchildren daily, playing with them and attending their little league games (Tr. 88–89, PAGEID #112–13).

      B.      **State Agency Consultants**

State agency medical consultant Lynne Torello, M.D., reviewed the objective medical evidence from February 28, 2012 to September 19, 2012. (Tr. 100–107, PAGEID #124–31). Dr. Torello found that Plaintiff could: occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand, sit, and/or walk for approximately 6 hours in an 8-hour work day. (Tr. 104–105, PAGEID #128–29). She determined that Plaintiff could occasionally use ramps or stairs, never climb ladders, ropes, or scaffolds, balance, and occasionally stoop, kneel, crouch, and crawl. (*Id.*). In the personalized decision note, Dr. Torello stated:

> You said you are disabled due to back problems, problems with knees, arthritis throughout most of your body, high blood pressure, pain in feet, pain in shoulders and a limited range of motion. Medical records show that you have been followed for these conditions. While your conditions do give you some limitations, records show that you are able to walk on your own, move your arms and legs freely, act in your own interest and care for your own needs. As a result we are unable to find you disabled.

(Tr. 106, PAGEID #130).

Diane Manos, M.D., reviewed the objective medical evidence from February 28, 2012 to October 21, 2012. (Tr. 109–116, PAGEID #133–40). Dr. Manos affirmed Dr. Torello's assessment that Plaintiff could: occasionally lift and/or carry 20 pounds, frequently lift and/or

4

carry 10 pounds, stand, sit, and/or walk for approximately 6 hours in an 8-hour work day. (Tr. 113, PAGEID #137). She likewise determined that Plaintiff could occasionally use ramps or stairs, never climb ladders, ropes, or scaffolds, balance, and occasionally stoop, kneel, crouch, and crawl. (Tr. 114, PAGEID #138). In the personalized decision note, Dr. Manos stated:

> You said you are disabled due to back problems, knee problems, arthritis throughout most of body, high blood pressure, pain in feet, pain in shoulders and limited range of motion. Because you did not agree with the initial denial decision, you asked that your claim be reviewed again. After review of all medical evidence and taking vocational factors into consideration, we agree with the decision. While the records indicate that you have some physical conditions causing limitations, exams do not support that your symptoms are so severe as to prevent you from performing all work. Therefore, despite pain and discomfort we are unable to find you disabled.

(Tr. 116, PAGEID #140).

### C. The ALJ's Decision

The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine (mild); degenerative joint disease of the left knee, and obesity. (Tr. 43, PAGEID #67). The ALJ also addressed Plaintiff's non-severe impairments, which included swelling of Plaintiff's feet and legs (Tr. 44–45, PAGEID #68–69), Plaintiff's "history of surgical repair of left foot fracture with mild degenerative changes, small plantar calcaneal spur of the left foot, status post bilateral Achilles debridement and repair, left retrocalcaneal bursitis and right ankle tendonitis" (Tr. 45, PAGEID #69), "bilateral shoulder pain" and a "limited range of motion of the bilateral shoulders" (Tr. 45–46, PAGEID #69–70).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (*Id.*). As to Plaintiff's residual functional capacity, the

5

ALJ stated:

> [a]fter careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is occasionally able to balance, stoop, kneel, crouch, crawl and climb stairs and ramps. She can never climb ladders, ropes, or scaffolds. She can frequently perform overhead reaching with the bilateral upper extremities.

(Tr. 48, PAGEID #72). In making this determination, the ALJ stated that she had considered the functional limitations resulting from all of Plaintiff's medically determinable impairments, including her non-severe impairments. (*Id*.). The ALJ specifically noted that this included Plaintiff's "status post bilateral shoulder repair with right acromioclavicular (AC) joint hypertrophy and probable mild impingement that restricts [Plaintiff's] residual functional capacity to frequent overhead reaching with the bilateral upper extremities." (*Id*.).

The ALJ also found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 49, PAGEID #73). The ALJ made this finding based on a review of the objective medical evidence (Tr. 49–50, PAGEID #73–74), and Plaintiff's daily activities (Tr. 51, PAGEID #75). The ALJ also relied on the opinion evidence of Dr. Torello and Dr. Manos (*id*.). Ultimately, the ALJ found "the claimant's complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities with limitations" as set forth in the residual functional capacity. (Tr. 52, PAGEID #76).

The ALJ determined that Plaintiff was capable of performing past relevant work as a retail business owner and, thus, found Plaintiff was not disabled.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if

6

supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002).

### III.   DISCUSSION

In her statement, Plaintiff assigned two errors. First, Plaintiff contends that the ALJ committed reversible error in failing to follow the requirements Social Security Ruling ("SSR") 96-7p and 20 C.F.R. § 404.1529(c)(3) in finding that her subjective allegations were not credible. Second, Plaintiff argues that the ALJ's formulation of her residual functional capacity is not supported by substantial evidence because the ALJ failed to consider all of her severe and non-severe impairments. Plaintiff characterizes these assignments of error as "legal issues . . . not driven by medical facts," and has "no dispute" with the ALJ's recitation of the medical evidence. (Doc. 7 at 8).

####    A.   The ALJ's Credibility Determination

Generally, an ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. *See* 20 C.F.R. §404.1529. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication

(including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. § 404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons do not have substantial support in the record.  *See, e.g.*, *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (Tr. 49, PAGEID #73).  More specifically, the ALJ determined that the "alleged severity of the claimant's subjective allegations is inconsistent with the medical evidence of record, including the subjective objective findings and her daily activities."  (Tr. 51, PAGEID #75).

Plaintiff attacks this determination on two grounds.  First, she asserts that the ALJ did not review the factors listed in SSR 96-7p and relied solely on medical evidence in discrediting her complaints of pain.  Second, she argues that the ALJ selectively cited the record with respect to her activities of daily living and failed to acknowledge the limited extent to which she could perform them.

### 1.  The Relevant Factors

Plaintiff's first argument is based an assumption that an ALJ considers only those factors that are discussed in the decision.  That is not the law.  Although the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight," SSR 96-7p; *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007), "[t]here is no

8

requirement . . . that the ALJ expressly discuss each listed factor," *Coleman v. Astrue*, 2010 WL 4094299, *15 (M.D. Tenn. Oct. 18, 2010). This is particularly true where the ALJ has "expressly stated that she had considered S.S.R. 96-7p," and "[t]here is no indication that the ALJ failed to do so." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

That is the case here. As Plaintiff admits, "the ALJ acknowledged in her decision that she was required to follow the dictates of SSR 96-7p, SSR96-4p, and 20 C.F.R. § 404.1529 in evaluating [her] credibility regarding subjective allegations." (Doc. 7 at 9). And there are indications that the ALJ did so. The ALJ discussed Plaintiff's neck, back, arm, knee, and leg pain, and Plaintiff's statements that she could stand in one place for only five to ten minutes, sit no greater than 30 minutes without elevating her legs, and could sit for approximately one hour with her legs elevated. (Tr. 49–51; PAGEID #73–75). The ALJ also noted that Plaintiff: elevated her legs to alleviate symptoms; was prescribed Hydrocodone, which caused her to vomit, Phenergan for nausea, Celebrex, and received injections; underwent chiropractic treatment and received advice about engaging in home exercises and following a healthy diet; used a stool behind the counter while working, sits in chair while cooking, and sits in a reclining position. (*Id.*). Finally, as discussed below, the ALJ discussed Plaintiff's daily activities and relied on them in discrediting Plaintiff's subjective allegations. (Tr. 51, PAGEID #75).

Plaintiff argues that the ALJ's "brief listing of evidence" is simply a "summary and not any kind of 'consideration' and certainly not a stated basis for [her] credibility finding." (Doc. 17 at 2). This Court disagrees. The ALJ's reference to this evidence belies Plaintiff's argument that the ALJ "relied solely upon the objective medical evidence to discredit her testimony." (Doc. 7 at 10). Because the ALJ expressly stated that she had considered the relevant factors and

9

there is no indication that she failed to do so, Plaintiff's first argument is without merit. *White*, 572 F.3d at 287.

### 2. Daily Activities

With respect to Plaintiff's daily activities, the ALJ noted that:

> Prior to her date last insured for Title II benefits, December 31, 2012, she had no difficulty driving. She continued to work through February 2012, albeit reduced hours. She admits to attending her grandchildren's ball games, dining out and attending church. She performs household chores, cooks, shops, and does laundry.

(*Id.*). The ALJ considered these activities as evidence that Plaintiff's subjective complaints were not entirely credible. (*Id.*).

Plaintiff argues the ALJ selectively cited the record with respect to her daily activities and failed to acknowledge the limited extent to which she could do them. For example, Plaintiff testified that she needs take breaks while cleaning and doing laundry (Tr. 83, PAGEID #107), needs help with her groceries (Tr. 84, PAGEID #108), can lift a gallon of milk only with both hands (Tr. 81, PAGEID #105), and, as the ALJ acknowledged, needs to sit down while cooking (Tr. 80, PAGEID #104). However, those limitations are unsupported by any evidence apart from Plaintiff's own testimony. The ALJ found that Plaintiff's examinations and treatment were not entirely supportive of her claimed limitations, and it was within the ALJ's discretion to do so. *See Murphy v. Comm'r of Soc. Sec.*, 2014 WL 5432125, *8 (S.D. Ohio Oct. 27, 2014)("[A]n ALJ may take activities of daily living into account in making a credibility determination, especially if those activities appear inconsistent with the Plaintiff's own reports of what she can and cannot do.").

Reviewing courts "may not disturb" an ALJ's credibility determination, "absent

10

compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). Further, reviewing courts "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Here, the record reflects that the ALJ considered not only the lack of objective medical evidence to support Plaintiff's claims, but other relevant factors—like Plaintiff's daily activities, and that the ALJ acted within her considerable discretion in weighing the evidence. Because the ALJ explained why Plaintiff was not entirely credible and that explanation enjoys substantial support in the record, Plaintiff's first statement of error is without merit.

### B. The ALJ's Consideration of Severe and Non-Severe Impairments

Next, Plaintiff argues that the ALJ erred in failing to explain the impact her severe impairment of obesity had on her residual functional capacity. (Doc. 7 at 14). Plaintiff also argues the ALJ erred in failing to consider two non-severe impairments—the pain and swelling of her feet, and the pain and limitation of motion in her shoulders. (*Id*. at 15). Finally, Plaintiff argues that the ALJ erred by failing to perform a "function-by-function" evaluation to determine her residual functional capacity.

If an ALJ finds that a plaintiff suffers from one severe impairment, then the ALJ must consider both severe and non-severe impairments in determining whether the plaintiff is disabled. SSR 96-8p; 20 C.F.R. § 404.1545(a); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). The ALJ does not, however, have a heightened articulation requirement to explain how each severe

or non-severe impairment impacts the disability determination. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The plain language of the ALJ's opinion states that he considered all impairments. The ALJ thus considered all evidence as required by the regulation."). Indeed, if the ALJ's decision indicates that all of the plaintiff's severe and non-severe impairments were considered, that is sufficient. *Id.*; *see also Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 591–92 (6th Cir. 1987). Finally, although SSR 96-8 technically requires a "function-by-function" evaluation to determine the plaintiff's residual functional capacity, the ALJ is not required "to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 at 4 (3d Cir. Dec. 19, 2000) (noting the difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion")).

In the decision, the ALJ explicitly stated that she considered all of Plaintiff's impairments, both severe and non-severe, and expressly recognized the impairment in Plaintiff's shoulders. (Tr. 48, PAGEID #72). The ALJ stated:

> In order to determine the claimant's residual functional capacity, the undersigned has considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are nonsevere (20 CFR 404.1545). This would include the claimant's status post bilateral shoulder repair with right acromioclavicular (AC) joint hypertrophy and probable mild impingement with the bilateral upper extremities. The evidence does not support a finding of any additional functional limitations other than those included in Finding #5.

(*Id.* (emphasis added)). Given the ALJ's indication that she considered all of plaintiff's severe and non-severe impairments, she "was not required to further elaborate upon [her] thought processes." *Meloche v. Comm'r of Soc. Sec.*, No. 1:08-cv-611, 2009 WL 3261619, at *3 (W.D.

Mich. Set, 23, 2009) (citing *Gooch*, 833 F.2d at 592; *Simons v. Barnhart*, 114 F. App'x 727, 734 (6th Cir. 2004)).  But the ALJ did elaborate, going beyond what is required.

The ALJ noted the lack of objective medical evidence to support Plaintiff's claim of limitations caused by obesity, observing that Plaintiff had not been referred to a dietician, and there were no further recommendations regarding that condition.  (Tr. 50, PAGEID #74).  The ALJ also assigned "great weight" to the opinions of Lynne Torello, M.D. and Diane Manos, M.D., the state agency reviewers who considered, *inter alia*, the pain in Plaintiff's feet and the pain and limited range of motion in her shoulders.  (Tr. 51, PAGEID #75; Tr. 100-107, PAGEID #124-131; Tr. 109-16, PAGEID #133-40).  It was proper for the ALJ to consider those non-severe impairments indirectly, particularly where the expert reports on which she relied expressly considered them.  *Bledsoe*, 165 F. App'x at 412.

"Plaintiff bears the burden through step four of the sequential process, the point at which her RFC is determined."  *Mathis-Caldwell v. Comm'r of Soc. Sec.*, No. 1:15-cv-532, 2016 WL 2731021, at *6 (W.D. Mich. May 11, 2016).  Plaintiff points to no evidence in the record to suggest that her obesity, the pain and swelling of her feet, and the pain and limitation of motion in her shoulders caused her any limitations greater than those considered by the ALJ.  Based on the foregoing, the Court finds that the ALJ's considered all of Plaintiff's severe and non-severe impairments in assessing her residual functional capacity, and the residual functional capacity determination is supported by substantial evidence.  Thus, Plaintiff's second assignment of error is without merit.

## IV. RECOMMENDED DISPOSITION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of Defendant.

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:  July 22, 2016                                     /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE